## SPRINGER *v.* INDIANAPOLIS BREWING COMPANY.

<div style="float:right">126   321<br>f126   678<br><br>126   321<br>130   115</div>

1. Where goods of a certain brand and quality were sold, and the buyer afterwards ordered another shipment of the same brand and quality, which order was accepted and the goods shipped thereon, the seller warranted the last shipment to be of equal quality with the first. *Haltiwanger* v. *Tanner*, 103 *Ga.* 314.
2. If, after acceptance of the goods, the purchaser discovered that the quality was inferior to that warranted, he could plead partial failure of consideration to an action for the purchase-price, and would be entitled to an abatement of the purchase-price to the extent of the difference between the purchase-price and the actual value of the goods.
3. An express warranty excludes an implied warranty; and in a suit to recover the purchase-price of goods sold under an express warranty, with a plea of partial failure of consideration, the issues presented are whether the goods delivered were of the quality warranted, and, if not, to what extent the purchase-price is to be abated.
4. If there are defects in the goods delivered, and there is an express warranty, acceptance by the buyer with knowledge of such defects will amount to a waiver of the warranty. But if the defects are not discovered until after acceptance, the buyer may plead such in abatement of the price.
5. The letters referred to in the motion for new trial were properly admitted in evidence.

Argued February 27,—Decided August 17, 1906.

Complaint.   Before Judge Willis.    City court of Columbus. August 19, 1905.

The plaintiff instituted a suit declaring upon an open account and exhibiting a bill of particulars.   The defendant by plea denied the indebtedness, for the reasons stated; and set up a contract under which the goods were bought, claiming that the purchase was made by sample exhibited by the agent of the vendor, and therefore there was an express warranty that the quality of the goods should be equal to that of the sample; that as a matter of fact they were not, and, because of the deficiency in that respect, the goods were not worth the contract price, for which reason the amount of the plaintiff's recovery should be correspondingly reduced.   On the trial the plaintiff introduced evidence proving the sale and delivery at the price stated, and that the defendant had ordered from the plaintiff three car-loads of beer of a given grade and quality, known as the "Progress brand;" that one car-load was shipped May 10, 1902, and the second was shipped July 19, 1902, but the third, which was ordered in May, 1903, was not shipped, because of a failure to pay for the second.   There was no evidence relative to the exhibition of any sample by the agent of the vendor.   The beer in controversy was shipped in response to an order as follows: "Columbus, Ga., July 17, 1902. Indianapolis Brewing Co., Indianapolis, Ind.   Ship immediately car progress beer.   Check en route to cover last car.   Route car same as last.   F. H. Springer."   There was a letter acknowledging and accepting this order, with the promise that the "car will go forward to-morrow."   This is the whole contract relative to the subject-matter of this suit.   The record discloses no other agreement with reference thereto." ' The car was shipped on July 19, 1902.   The first shipment was salable.   The evidence is conflicting as to the second.   On September 23, defendant wrote making complaint as to quality.   Plaintiffs replied and asked for samples, which do not appear to have been furnished.   After this complaint, promises of payment were made by letter, and also verbally to the agent of the plaintiff, who called on defendant.   After purchase of the second car, defendant entered a copartnership styled "Reed-Moschell Company," who conducted the business, and some of the correspondence was in the name of that copartnership.   The jury found for the plaintiff.   The defendant moved for a new trial,

which was denied, and he excepted. In addition to the general grounds, the following other grounds were taken in the motion:

1, 2. The court admitted in evidence certain letters signed Reed-Moschell Co., which were objected to on the ground that said company was altogether a different party from the defendant.

3. The court admitted in evidence a letter signed by plaintiff addressed to F. H. Springer & Co., which was objected to on the ground that it was not written to defendant or any firm of which he was a member. The letter was in substance as follows: "We received your kind order through our Mr. Holtzclaw for 105 casks, to be shipped June 1st in our branded bottles. We will be ready to ship the same immediately upon your advice. Mr. Holtzclaw also states to us that he agreed to allow you ten casks as samples, and to cover the few casks you have on hand which formed a sediment. This is perfectly satisfactory to us, as we desire to have you handle our goods again. We want to build up a large trade on the same. Mr. Holtzclaw also states to us that you will remit the balance of your account on the 20th, which is satisfactory."

4. The court erred in charging the jury as follows: "Mr. Springer claims that he bought this beer upon the representation of the Brewing Company, and that it was not suitable for the uses for which he bought it; that is, for sale by him in his business as a wholesale and retail dealer in this town;" because "there was no such claim made by the defendant's plea in said case, the defendant's plea being partial failure of consideration, and the defendant claiming to have bought the beer upon a sample and upon the strength of purchases of the same goods theretofore made by him."

5. The court erred in charging as follows: "I charge you that if the goods were bought generally and not upon an express warranty, the purchaser must exercise caution in detecting defects. There is a duty on the purchaser to discover any defect that may be ascertained by ordinary diligence; and if you find that the defendant by the exercise of ordinary diligence could have discovered defects in the beer, if there were any defects, before the beer was accepted, then I charge you that the defendant would be estopped from setting up such defects as a defense;" because the charge was "not applicable to the case under consideration; and because said charge was misleading and was not a correct rule of

law controlling the issues made in said case; and because said charge was otherwise illegal."

6. The court erred in charging as follows: "It is claimed that the defendant discovered the defects when the first car of beer was opened, and notwithstanding these defects accepted it, used it in his business, and after so discovering the defects promised in writing to pay for it;" because "no such claim was made by the pleadings and evidence in said case; and because said charge was not adjusted to the facts and issues in said case; and because it is otherwise illegal."

7. The court erred in charging as follows: "I charge you that if you believe from the testimony that the defendant did discover the defects when the beer was first opened, yet he went ahead selling it, never offered to return it, and afterwards agreed in writing to pay for it, you should find a verdict for the plaintiff;" because "it is not the correct rule of law that should govern in the case then under consideration; and because said charge had the effect of entirely withdrawing from the consideration of the jury the defendant's plea of partial failure of consideration."

8. The court erred in charging as follows: "Look and see if Mr. Springer, by the exercise of ordinary care, if there was any implied warranty, could have discovered any defects in the beer, if there were any defects in it. The law puts that duty upon him. If he could have found them out and didn't do it, if there were such defects that could be found out, he would be estopped from setting it up as a defense;" because "it is not a correct rule of law; because it had the effect of eliminating from the consideration of the jury the defendant's plea of failure of consideration; and because said charge is otherwise illegal."

9. The court erred in charging as follows: "If he actually discovered defects, yet still accepted it and used it in his business and afterwards agreed to pay for it, then, as I stated to you before, you should find a verdict for the plaintiff;" because "it is not a correct rule of law that should govern and control the jury in arriving at a verdict in the case, and eliminated from the consideration of the jury all evidence respecting defendant's plea of partial failure of consideration; and because said charge is otherwise illegal."

10. The court erred in charging as follows: "If he knew at the

time he accepted these goods that they were defective, they were not suited for the purpose for which they were bought, yet he went ahead and used them, made no offer to return them, and agreed in writing to pay for them, then he could not set that up as a defense;" because "it did not state a correct principle of law, and had the effect of withdrawing from the consideration of the jury the defendant's plea of partial failure; and was equivalent to a direction of a verdict in favor of the plaintiff in the amount sued for; and because said charge was otherwise illegal."

T. T. *Miller,* for plaintiff in error.    *C. E. Battle,* contra.

ATKINSON, J. From the evidence in this case it appears that both buyer and seller understood that the shipment of beer, for the purchase-price of which this suit was brought, was to be of the same quality as that of the previous car-load of beer. This amounted to an express warranty of the quality, and the standard was the grade and quality of the first shipment. The relative rights of the parties are stated in the 2d, 3d, and 4th headnotes. The court charged the jury on the subject of implied warranty; and in this he erred, because an express warranty excludes all idea of an implied warranty. The rules laid down in the headnotes will serve as a guide in the next trial. In connection with the rulings here made, see *Henderson Elevator Company* v. *North Georgia Milling Company,* ante, 279.

*Judgment affirmed. All the Justices concur, except Fish, C. J., absent.*